IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**ONEIDA RIVERA,**

    **Plaintiff,**

v.                                          CASE NO. 4:11-cv-509-RS-CAS

**DEPARTMENT OF HEALTH, STATE
OF FLORIDA,**

    **Defendant.**

_____/

## ORDER

Before me is Defendant's Motion for Summary Judgment (Doc. 40), Plaintiff's Response in Opposition (Doc. 54), and Defendant's Reply (Doc. 66).

## I. STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398

U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## II. BACKGROUND

I accept the facts in the light most favorable to Plaintiff. *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)). " 'All reasonable doubts about the facts should be resolved in favor of the non-movant.' " *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

In April 2007, Plaintiff was hired as the Budget Specialist by Vicki Stewart, Supervisor of Defendant's Budget Office for Polk County. Plaintiff was in the Selected Exempt Service, meaning she could be terminated for no reason at all. *See* Fla. Stat. § 110.604 (2011)("Employees in the Selected Exempt Service shall

serve at the pleasure of the agency head and shall be subject to … dismissal … or other personnel action at the discretion of the agency head.")  Throughout her employment, Plaintiff was the only African American working in Defendant's Polk County office.

Plaintiff's duties as Budget Specialist included maintaining budgets, tracking federal and state funding, maintaining ledgers, and validating budgets.  Plaintiff also developed a form spreadsheet for tracking federal and state funding, which has been adopted for use in many of Defendant's offices in varying counties.

During her employment, Plaintiff received performance evaluations no lesser than "meeting expectations," and even one evaluation of "exceeding expectations."  However, the performance evaluations also noted that Plaintiff "Needs Improvement" in three areas: preparation of monthly Level 4 variance reports without assistance, providing assistance with spending plans and financial reports, and coordinating training.  (Doc. 40-5, Ex. A).

Additionally, Ms. Stewart and Eddie Rodriguez, the Administrative Services Director in the Department of Health Polk County office, received complaints about Plaintiff's job performance from other employees.  Other employees complained that Plaintiff could not explain the technical aspects of budgeting and that they were left confused and frustrated after seeking assistance from Plaintiff.  (Docs. 40-5, 40-6).  Mr. Rodriguez also performed a portion of Plaintiff's duties by

transferring information from the Florida Information Reporting System (FIRS) into the local Microsoft Access program. After repeated attempts to teach Plaintiff the process to no avail, Mr. Rodriguez performed the task himself. (Doc. 40-6).

On September 25, 2008, Ms. Stewart met with Plaintiff and informed her that Department administration was seeking her resignation effective November 30, 2008. Ms. Stewart asserts that she also informed Plaintiff about the complaints regarding her job performance; however, Plaintiff asserts she was not made aware of any deficiencies in her job performance until after she filed the EEOC charge. Plaintiff requested that she be given the opportunity to think about whether to resign, and Ms. Stewart agreed. When deciding whether to resign, Plaintiff considered the Department's offer to allow Plaintiff to use accrued leave through December 1, 2008, and to stay on the Department's insurance plan through January 31, 2008. These benefits would not have been available if Plaintiff was terminated.

On September 30, 2008, Plaintiff met with Ms. Stewart and Mr. Rodriguez and asked them to reconsider their request for her to resign; however, they did not withdraw the request. On October 7, 2008—twelve days after the initial meeting requesting Plaintiff's resignation—Plaintiff met with Ms. Stewart, Mr. Rodriguez, and Lynn Ledford (Office Human Resources Director) and was asked for her decision. Plaintiff submitted her letter of resignation at the meeting, which was

accepted by the Department. October 7, 2008, was Plaintiff's last day of work, but she received her regular paycheck through December 1, 2008, and health insurance coverage through January 31, 2008. Ms. Stewart continued to fine errors in Plaintiff's works and received more complaints after Plaintiff resigned. (Doc. 40-5).

Plaintiff filed this suit alleging race discrimination under 42 U.S.C § 2000e et seq, 42 U.S.C § 1981, and Chapter 760, Florida Statutes, alleging she was constructively discharged because of her race.[1]

### III. ANALYSIS

To establish a prima facie case of discrimination, Plaintiff must show that (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of his protected class more favorably than he was treated; and (4) she was qualified to do the job. *Burke-Fowler v. Orange County, Fla.* 447 F.3d 1319, 1323 (11th Cir. 2006). To establish a claim for disparate treatment discrimination, a plaintiff can use direct evidence or circumstantial evidence of discrimination. *Id.* The framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973), and *Texas Department of Community*

---

[1] Because the Florida Civil Rights Act (Chapter 760, Florida Statutes) was patterned after Title VII, federal case law is applicable to both claims. *Florida Dept. of Community Affairs v. Bryant*, 586 So.2d 1205, 1209 (Fla. 1st DCA 1991).

*Affairs v. Burdine,* 460 U.S. 248, 101 S.Ct. 1089 (1981), is used in evaluating disparate treatment claims supported by circumstantial evidence. *See Wilson v. B/E Aerospace*, 376 F.3d 1079, 1087 (11th Cir. 2004).

Once a plaintiff has presented evidence of discrimination, the employer must articulate a legitimate, non-discriminatory reason for the employee's rejection. *Id.* at 1089-90. If the employer meets this burden of production, the plaintiff must then establish that the proffered reason is pretextual. *Id.* at 1090.

In her Complaint, Plaintiff asserts three different adverse employment actions: (1) exclusion from budget meetings that white staff members were permitted to attend, (2) being "stripped of her duties," and (3) that she was constructively discharged from her employment with Defendant. Defendant contends that exclusion from meetings and reassignment of duties do not qualify as adverse employment actions and that Plaintiff's resignation was voluntary.

*Exclusion from Meetings & Reassignment of Duties*

Plaintiff alleges that she was excluded from budget meetings that white employees were allowed to attend (Doc. 1-1), and in her deposition, Plaintiff stated that two months before her resignation, the budgets she was working on were reassigned to other employees, and she was asked to count deposits. (Doc. 40-3, p. 38-39).

The Eleventh Circuit has stated that it is "reluctant to hold changes in job duties [to] amount to [an] adverse employment action when unaccompanied by any tangible harm." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1244-45 (11th Cir. 2001)(citing *Mungin v. Katten Muchin & Zavis,* 116 F.3d 1549, 1557 (D.C. Cir. 1997)(agreeing with "other circuits [which] have held that changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes.")).  The Eleventh Circuit went on to say that

> In the vast majority of instances, however, we think an employee alleging a loss of prestige on account of a change in work assignments, without any tangible harm, will be outside the protection afforded by Congress in Title VII's anti-discrimination clause….

*Id.* at 1245.

The Middle District has held that "[e]ven if Plaintiff was excluded from certain unspecified meetings, this general allegation, without more, does not constitute an adverse employment action." *Smith v. Integrated Community Oncology Network, LLC,* 2010 WL 3895571, at *6 (M.D. Fla. 2010).  Plaintiff stated that she was excluded from "budget meetings directly related to Plaintiff's duties and necessary for her performance of such duties." (Doc. 1-1).  However, Plaintiff does not offer anything more than these allegations of being excluded from the meetings.  In her deposition, Plaintiff stated that she spoke with two

7

women who were not excluded from the meetings, but also admitted that she did not know if any other employees were excluded. (Doc. 40-3, p. 44).

The Supreme Court has held that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote reassignment *with significant different responsibilities*, or a decision causing significant change in benefits. *Burlington Industries v. Ellerth*, 524 U.S. 742, 761 (1998)(emphasis added). Plaintiff cites to *McNely v. Ocala Star* as an example of a reassignment of duties that meets the "tangible employment action" standard. 99 F.3d 1068 (11th Cir. 1996). In that case, the plaintiff was stripped of his supervisory duties and assigned to clean toilets as a janitor. Similarly, in *Sharpe v. Global Security*, the plaintiff went from directing and inspecting the work of other employees to being transferred to the bagging section. 766 F.Supp.2d 1272, 1292 (S.D. Ala. 2011). In those cases, there was a clear demotion and a *significant* change in responsibilities. With the case at hand, Plaintiff remained a budget specialist, but was assigned different duties. Neither her job title, hours, nor salary changed. Without a tangible harm, Plaintiff's exclusion from meetings and reassignment of duties do not constitute adverse employment actions.

*Voluntariness of Resignation*

The Eleventh Circuit recognizes two circumstances under which an employee's resignation will be deemed involuntary: (1) where the employer forces the resignation by coercion or duress or (2) where the employer obtains the resignation by deceiving or misrepresenting a material fact to the employee. *MacLean v. City of St. Petersburg*, 194 F.Supp.2d. 1290, 1299-30 (M.D. Fla. 2002)(citations omitted). In this case, Plaintiff alleges that her resignation was forced by coercion or duress. (Doc. 1-1). There are four factors for analyzing the voluntariness of a resignation: (1) whether the employee was given some alternative, (2) whether she understood the nature of the choice she was given, (3) whether she was given a reasonable time in which to choose, and (4) whether she was permitted to select the effective date of her resignation. *Venero v. City of Tampa,* 830 F.Supp. 1457, 1459 (M.D. Fla. 1993), *aff'd* 40 F.3d 389 (11th Cir. 1994).

In this case, Plaintiff was given a choice—either resign or be terminated. *Venero* stated that "the voluntariness of resignations has been upheld where they are submitted for purposes of avoiding threatened termination for cause." *Id.* at 1459. Plaintiff also understood the nature of the choice she was given. If she was terminated, she would not have been able to use her accrued leave or stay on the Department's health insurance plan. (Doc. 40-3, p. 61). Additionally, she

understood the difference of having "resigned" versus being "terminated" when looking for subsequent employment. *Id.*

Plaintiff was given twelve days to think about the decision before she submitted her resignation. *Venero* held that two days was enough time to "think and reason before making the decision to resign." 830 F.Supp. at 1460. And although Plaintiff did not choose her resignation date, Plaintiff does not question that reasonableness of the effective date, which was fifty-five days after she submitted her resignation. In *Paasch v. City of Safety Harbor*, 915 F.Supp. 315, 322 (M.D. Fla. 1999), the court held that a five-day grace period to resign (the effective date being on the last day of the grace period) did not make the plaintiff's resignation involuntary.

Lastly, Plaintiff relied on *Hargray v. City of Hallandale*, 57 F.3d 1560 (11th Cir. 1995), and *Rademakers v. Scott*, 350 F.App'x 408 (11th Cir. 2009), for the proposition that the Department must establish that it has "good cause" to believe that it had grounds for plaintiff's termination. However, Plaintiff's reliance on these cases is misplaced because neither is applicable to this case. Both *Hargray* and *Rademakers* involved plaintiffs with property interests in their continued employment, which is not the case here. Plaintiff was in the Selected Exempt Service and could be terminated at any time. The Department does not need to show good cause for Plaintiff's termination.

*Pretext*

The Department gave legitimate, non-discriminatory reasons for its decision to ask for Plaintiff's resignation, including several complaints about Plaintiff's job performance.  Plaintiff has not shown that these reasons are pretext.  Plaintiff argues that she did not know of the complaints about her job performance until after she filed the complaint with the EEOC.  However, Plaintiff offers no case law, and this Court knows of none, saying that she had to be aware of the complaints before she resigned.  "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered … extensive evidence of legitimate, non-discriminatory reasons for its actions." *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir. 1996).  Federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions … [their] inquiry is limited to whether the employer gave an honest explanation of its behavior." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir.2000)(quoting *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir. 1991)(internal citations omitted).

## IV. CONCLUSION

Defendants' Motion for Summary Judgment (Doc. 40) is **GRANTED**.  The Clerk is directed to close the file.

**ORDERED** on June 19, 2012.

           **/s/ Richard Smoak**
           **RICHARD SMOAK**
           **UNITED STATES DISTRICT JUDGE**